**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David S. Barresi, | ) | No. CV-07-1337-PHX-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Patrick R. Donahoe, Postmaster General, United States Postal Service, | ) | |
| Defendant. | ) | |

Pending before this Court is a Motion for Partial Summary Judgment (Doc. 110) filed by Defendant Patrick Donahoe.[1] For the reasons stated below, the Court grants in part and denies in part Defendant's motion.[2]

**BACKGROUND**

David Barresi worked as an auto mechanic for the United States Postal Service from 1985 until 1989, when he suffered a back injury that prevented him from fulfilling his duties.

---

[1] Pursuant to FED.R.CIV.P. 25(d), newly appointed Postmaster General Patrick Donahoe is substituted for past Postmaster General John E. Potter.

[2] Plaintiff's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

(Doc. 111, ¶¶ 2–3). The Postal Service maintained a program in which those who were injured on the job were retrained as "Rehabilitation" employees and placed in positions they could perform. (*Id.* ¶ 5). Pursuant to this program, Barresi was entered into a fourteen-month course in computer service and repair. (*Id.* ¶ 6). After completing the program, he returned to work for the Postal Service as an Information Technology ("IT") technician in 1993. (*Id.* ¶ 7).

In 1999, Barresi joined an administrative class action, *Glover v. Potter*, EEO Case No. 320-A2-8001X, in which "Rehabilitation" employees alleged that they were denied promotions based on their disabilities. Mr. Barresi continued to work as an IT Technician during the duration of the case, which settled in 2004. (*Id.* ¶¶ 10–11). In 2006, Barresi was involuntarily reassigned from IT to a position as an Environmental Control Officer. (Doc. 115, Ex. 1 at 122). Plaintiff then filed an Equal Employment Opportunity ("EEO") complaint, No. 4E-852-0023-07, alleging that he was transferred based upon his disability and as retaliation for participating in the *Glover* suit. He subsequently filed three further EEO complaints, alleging discrimination based upon disability, age, and retaliation. A Final Agency Decision has been issued in three of the complaints; the fourth was not accepted for investigation. (Doc. 23).

In 2007, Mr. Barresi applied for a listed position as a Training Technician within the Postal Service (Doc. 111, ¶ 35). He was interviewed by Patricia Murphy and Susan Jackson, neither of whom were aware of his previous EEO filings. (Doc. 111, ¶ 38). The interview consisted of prepared questions, including one asking the applicants to state their attendance record and evaluate their dependability. Mr. Barresi answered that he had taken extended time off for surgery and health issues relating to his long-term back problems. (Doc. 118, Ex. 9). The interviewers both agreed that another postal employee was the best qualified candidate, and she was offered the position. (Doc. 111, ¶ 42).

Mr. Barresi also applied for a position as an IT specialist, and was interviewed by a three-member panel. (Doc. 111, ¶¶ 18, 21). The panel consisted of Pedro Simpson, who was Mr. Barresi's manager and the subject of one of Mr. Barresi's then-open EEO filings, Patricia

1 | Armstrong, a Special Agent for the Postal Inspector's Service, and William Warren, the Area
2 | IT Manager, based in Denver. (Doc. 111, ¶ 21). Mr. Warren assembled the panel and made
3 | the final decision regarding hiring. (*Id.*). The panel ultimately selected another candidate for
4 | the position. (Doc. 118, Ex. 15, 75).

In July of 2007, Mr. Barresi filed this suit, alleging age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), and disability discrimination and retaliation under the Rehabilitation Act. He subsequently stipulated to the dismissal of the age discrimination and retaliation claims under the ADEA, retaining both discrimination and retaliation claims under the Rehabilitation Act. (Doc. 119). Plaintiff alleges that discrimination on the basis of disability accounted for the Postal Service's failure to hire him as a Training Technician, and that retaliation for his EEO actions accounted for its failure to hire him as a IT Specialist. (Doc 23, ¶ 22). He further claims that his forced transfer in 2006 was the result both of discrimination on the basis of disability and of retaliation for his participation in the *Glover* class action. (*Id.* ¶ 23). Additionally, he alleges discrimination and retaliation over the denial of a detail assignment in October of 2007, his placement on administrative leave, and his termination. (*Id.* ¶¶ 24–25).

On January 31, 2011, Defendant moved for summary judgment on "all the remaining allegations of Plaintiff's Second Amended Complaint." (Doc. 110). As of September 25, 2008, however, Plaintiff had filed a Third Amended Complaint, which included additional claims that he had been denied a detail assignment, placed on administrative leave, and terminated. (Doc. 23, ¶¶ 24–25). Plaintiff's Third Amended Complaint supersedes his Second Amended Complaint in its entirety. *King v. Atiyeh*, 8143 F.2d 565, 567 (9th Cir. 1987). Nevertheless, those claims in the Second Amended Complaint that are restated in the Third Amended Complaint, and which have been discussed by Plaintiff and Defendant, will be addressed in this order despite Plaintiff's reference to the Second Amended Complaint. The claims first presented in the Third Amended Complaint and not addressed in Defendant's Motion survive summary judgment.

**DISCUSSION**

I. **Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

II. **Analysis**

A. **Rehabilitation Act–Discrimination**

To claim discrimination under the Rehabilitation Act,[3] Plaintiff must first establish that he has a disability. An individual is disabled if he "(1) has a physical or mental impairment that substantially limits one or more of [his] major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). Plaintiff asserts that he is permanently disabled as a result of his on-the-job injury, and Defendant concedes that he is disabled. (Doc. 110; Doc. 118, Ex. 24).

To demonstrate a prima facie case of employment discrimination, Plaintiff must show that he is qualified–meaning he can perform the essential functions of his job with or without

---

[3] 29 U.S.C. § 794(d) provides that the standards used to determine a violation of the Rehabilitation Act in an employment context are the same as those used to determine a violation of the American with Disabilities Act ("ADA").

reasonable accommodation–and that his employer took adverse employment-related actions solely[4] because of his disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *see also* 29 U.S.C. § 794(a). "Making a prima facie showing of employment discrimination is not an onerous burden." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1091 (9th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a plaintiff has made out a prima facie case of discrimination on the basis of such a disability, "[t]he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003) (citing *McDonnell Douglas*, 411 U.S. at 802). If the employer provides evidence of such a nondiscriminatory rationale for the adverse employment action, "the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's evidence is pretextual." *Id.*

### 1. Training Technician Position

Plaintiff states a prima facie case of employment discrimination regarding his application to be a Training Technician. Defendant concedes that Plaintiff is disabled. (Doc. 110). Susan Jackson, who sat on the interview panel, stated that all the candidates who were selected for an interview had demonstrated, through filling out an application form, that they met minimum qualifications for the position. (Doc. 114, Ex. 1 at 41). Plaintiff has therefore submitted evidence that he was qualified for the position. The prepared interview included questions regarding attendance, and Plaintiff's answers detailed the fact that he had missed substantial time because of his injury and disability. (Doc. 118, Ex. 9). The candidate who was hired had a perfect attendance record. (Doc 118, Ex. 12). The inclusion of a question regarding attendance, combined with the hiring of an applicant with a perfect attendance record over a qualified disabled person who had taken substantial sick leave, establishes a

---

[4] The Rehabilitation Act requires that the termination be *solely* as a result of the disability, while the ADA does not.

prima facie case.

Defendant, however, offers a legitimate non-discriminatory reason for the adverse employment action. It asserts that the person actually hired was better qualified for the position. If the person hired is better qualified for the position, that constitutes a legitimate, non-discriminatory reason for the adverse action. *Parsons v. Del Norte Cty.*, 728 F.2d 1234, 1239 (9th Cir. 1984). Defendant provides evidence that, attendance records aside, the person hired in Plaintiff's stead possessed numerous relevant qualifications that Plaintiff lacked. The job posting detailed a position that included instructing other employees and substantial interpersonal interaction. (Doc. 114, Ex. 4). Martinez had worked as an on-the-job trainer, and had significant customer service experience. (Doc. 114, Ex. 7). Furthermore, according to Susan Jackson, Martinez "displayed one or more detailed examples of each of the eleven job requirements," while Mr. Barresi's responses "were very brief and general in scope." (Doc. 114, Ex. 6). Mr. Barresi's written application "was rated lower than any of the other applicants" who were interviewed. (*Id.*).

Plaintiff alleges that the proffered reason is pretextual by reiterating the claim that the question on attendance masked a discriminatory purpose. (Doc. 119). However, he offers no direct evidence to support this claim. Where Plaintiff can only offer circumstantial evidence that a proffered non-discriminatory explanation is pretextual, the evidence "must be specific and substantial in order to create a triable issue with respect to whether the employer intended to discriminate." *Goodwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1222 (9th Cir. 1998) (internal citations omitted). Plaintiff fails to meet this burden.

### 2. Involuntary Transfer

Regarding his involuntary transfer, Plaintiff also establishes a prima facie case of discrimination. Defendant concedes that Plaintiff is disabled. (Doc. 110). He worked as an IT technician for thirteen years, demonstrating that he is qualified for the position. (Doc. 115, Ex. 1 at 51). Furthermore, all of the employees transferred in 2006 were "Rehabilitation" employees. The fact that only those employees who had suffered an injury were subject to transfer satisfies the minimal burden needed to state a prima facie case. *Bates v. U. S. Postal*

1  *Serv.*, 511 F.3d 874, 984 (9th Cir. 2007).

Here too, however, Defendant supplies a non-discriminatory reason for the employment action. In 2006, the entire rehabilitation program, through which Plaintiff was working as an IT technician, was de-funded by the Department of Labor. (Doc. 112, Ex. 3). Plaintiff argues that Defendant's non-discriminatory reason is not "premised on competent evidence." (Doc. 119). However, Defendant has submitted the report of Joseph Cannavo, Jr., the arbitrator in a American Postal Workers Union grievance regarding the transfers, to which Defendant objects for relevance and as lacking foundation. (Doc. 112, Ex. 3; Doc. 120). The arbitrator's report is admissible as a public record, because it resulted "from an investigation made pursuant to authority granted by law." FED. R. EVID. 803(8)(C). The public records exception to the hearsay rule does not require foundation. *U.S. v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997).

The de-funding of the program in its entirety qualifies as an adequate non-discriminatory reason for Barresi's transfer. *See Snead*, 237 F.3d. at 1093 n.11 ("the elimination of [Plaintiff's] position as part of a reduction in force" is a legitimate non-discriminatory reason for dismissal). In finding for the Postal Service on May 28, 2008, the arbitrator wrote, "[n]othing in the record disputed the Service's contention that the participation of the Grievants in the IT was suspended due to budgetary reasons." (Doc. 110, Ex. 8). Plaintiff offers no evidence to suggest that the Department of Labor's defunding of the rehabilitation program was pretextual, stating only that the fact that the entire program was defunded is "of no consequence." (Doc. 119). Defendant has offered a legitimate non-discriminatory reason for the transfer, and Plaintiff has offered neither direct nor circumstantial evidence that the reason is mere pretext.

Plaintiff's discrimination claims under the Rehabilitation Act do not survive summary judgment. While Plaintiff states a prima facie case for both claims, Defendant offers legitimate non-discriminatory reasons for the adverse actions. Plaintiff offers only circumstantial evidence that these reasons were mere pretext, such evidence must be "specific and substantial in order to create a triable issue of fact." *Goodwin*, 150 F.3d at

1222. He has failed to provide such evidence.

B. **Rehabilitation Act-Retaliation**

Plaintiff alleges that the rejection of his application to be an IT Specialist constituted retaliation for earlier EEO complaints and that his involuntary transfer constituted retaliation for involvement in *Glover*. (Doc. 23). To make out a prima facie case of retaliation, Plaintiff must show: "'(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two.'" *Coons*, 383 F.3d at 887 (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to "'present legitimate reasons for the adverse employment action.'" *Id.* (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). If Defendant carries this burden, Plaintiff must demonstrate "a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Id.*

1. **IT Specialist Position**

Plaintiff alleges that the rejection of his application to be an IT Specialist constituted retaliation for earlier EEO complaints. (Doc. 23). Here, he states a prima facie case. Filing EEO claims constitutes protected activity, *Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007), and denial of the promotion constitutes an adverse action. Two of the three members of the panel that interviewed Plaintiff, including Pedro Simpson, the subject of one of the complaints, were aware of his EEO history. (Doc. 113, Ex. 1; Doc. 113, Ex. 2). The fact that the subject of an open EEO complaint was sitting on the panel interviewing Barresi was sufficient to satisfy the causal link element and therefore state a prima facie case of retaliation. *See Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989).

Defendant once again provides a non-discriminatory motive for the employment action. Both Patricia Armstrong and William Warren, whom Plaintiff concedes held sole hiring authority, independently rated the other candidate higher than Mr. Barresi. (Doc. 120 ¶ 1; Doc. 111 ¶ 21; Doc. 113, Ex. 1; Doc. 113, Ex. 4). Armstrong, whom Plaintiff concedes had no knowledge of his EEO history, wrote that Plaintiff, "seemed to substitute hypothetical answers when asked to give a specific answer," while the successful candidate "provided

specific and relevant work experience." (Doc. 113, Ex. 4). She wrote that in response to a specific technical question, Barresi "did not provide the correct answer despite being asked twice," while the successful applicant "got the answer right away." (*Id.*) Warren wrote that the other candidate's responses to interview questions were "more accurate" than Barresi's, and that he "went into greater depth describing his abilities to do the requirements." (Doc. 113, Ex. 1). Warren acknowledge that knew that Barresi had filed an EEO complaint, but claimed that he "had no knowledge of its particulars." (*Id.*). Pedro Simpson, the subject of Plaintiff's EEO complaint, wrote only that "the selecting official, William M. Warren, determined that the selected candidate was best qualified for the position." (Doc. 113, Ex. 2).

Plaintiff alleges that Defendant's reasons for hiring the other applicant are pretextual because of Simpson's participation in the panel and Warren's knowledge of the complaint. When an allegedly biased employee participates in an adverse employment decision, the decision as a whole is tainted if the biased individual "had a pervasive influence on the administrative inquiry that led to the adverse employment action." *Poland*, 494 F.3d at 1183. *See also Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1114 (9th Cir. 2003) (final action by unbiased employee who "did not conduct an independent review" does not break the "chain of causation" linking action to biased manager). On the other hand, should the record indicate that the person exercising final authority "was not influenced by any retaliatory motive" on the biased party's part, the independence of the process is preserved. *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 807 (9th Cir. 2009).

Here, Plaintiff emphasizes that Simpson's "active and central role in the selection process cannot be ignored or sanitized." (Doc. 119).Warren wrote that he was aware of Barresi's EEO history, but that "[m]y knowledge of his complaint had no bearing on my determination of the best qualified candidate." (Doc. 113, Ex. 1). Patricia Armstrong, however, stated that Warren told her after the interview that Barresi "was given an opportunity for an interview because he had former EEO's filed." (Doc. 112, Ex. 5 at 66). Simpson, meanwhile claimed that Warren had not wished to interview Barresi at all, until

1 Simpson himself recommended the interview, based upon, "My long history with Mr.
2 Barresi." (Doc. 118, Ex. 17 at 78). These contradictory statements present a genuine issue
3 of fact as to whether Simpson and Warren's knowledge of Plaintiff's EEO history influenced
4 their decision not to hire him. *See Miller*, 885 F.2d at 505 (finding that a jury could find a
5 three-person panel's proffered reason for an adverse action pretextual solely because one
6 member of the panel was the subject of a previous EEO by the candidate, one knew of the
7 EEO but had not attended the fact-finding conference, and one was independent). A
8 reasonable jury could find that Warren and Simpson acted to deprive Barresi in retaliation
9 for his complaints, and that the proffered reason that the other candidate was better qualified
10 was mere pretext. Accordingly, summary judgment on the retaliation claim regarding the IT
11 Specialist position is denied.

### 2. Involuntary Transfer

Plaintiff further claims that his involuntary transfer constituted retaliation for involvement in *Glover*. (Doc. 23). Here, he fails to establish a prima facie case. Defendant concedes that participation in the class action constituted protected activity. (Doc. 110). Although his new position paid the same wage and required that he work the same hours, Plaintiff disliked the duties in comparison to his previous assignment and did not consent to the transfer. (Doc. 110, Ex. 1 at 121–23). Plaintiff does not, however, point to any nexus between the employment decision and his participation in *Glover*. The transfer took place nearly two years after the *Glover* case was settled, too long a time to find a nexus solely on the basis of proximity in time. *See Coons*, 383 F.3d at 878 (finding that a year represents a "distant time sequence . . . inadequate to show a causal link between his protected activity and . . . his demotion"). Plaintiff claims that his supervisor, Bob Garmin, told him that the transfer was linked to participation in the class action. (Doc. 115, Ex. 1 at 106). In his own deposition, however, Garmin stated that he had no knowledge as to why the transfers had taken place, and that when he spoke to Barresi he was only repeating that another employee had "speculated" that the transfers and the class action were related. (Doc. 115, Ex. 4 at 51). Moreover, even were the Plaintiff to state a prima facie case, the Defendant restates its non-

- 10 -

1 | discriminatory motive for the transfer; namely, that the entire program in which Mr. Barresi participated was defunded by the Department of Labor. As discussed above, Plaintiff has not supplied adequate evidence that this offered non-discriminatory reason is mere pretext.

**CONCLUSION**

Plaintiff states a prima facie case in both his discrimination and retaliation claims regarding his job applications, and in his discrimination claim regarding his involuntary transfer. Defendant puts forward legitimate non-discriminatory reasons for all three of these decisions. Plaintiff does not provide specific and substantial evidence to create a triable issue on whether the proffered reasons were pretextual regarding the transfer or the Training Technician position. He does offer such evidence regarding the application process to be an IT Specialist, and may continue to pursue that claim.

In addition, plaintiff may continue to pursue his claims that he was subjected to discrimination and retaliation when denied a detail assignment, placed on administrative leave, and terminated.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 110) is **GRANTED** in part and **DENIED** in part.

DATED this 6th day of September, 2011.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge